**NATIONAL JEWISH ADVOCACY CENTER, INC.**
Matthew Mainen
Maryland Bar No. 2012170265
*Pro Hac Vice Application Pending*
666 Harless Place
West Hempstead, NY 11552*
Phone: (301) 814-9007
Email: matt@njaclaw.org
Attorney is not licensed and does not practice in New York;
mail will be forwarded to him in Maryland.
Counsel for Plaintiff

**IN EVERY GENERATION**
A division of Hershenson Rosenberg-Wohl, APC
David M. Rosenberg-Wohl (SBN 132924)
3080 Washington Street
San Francisco, CA 94115
Phone: (415) 317-7756
Email: david@hrw-law.com
Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Michael Pauker** ) | |
| ) | |
| *Plaintiff,* ) | **Case No. 3:25-cv-02852** |
| ) | |
| **v.** ) | **Am. Complaint** |
| ) | |
| **Heart Consciousness Church, Inc., Derek Cyr,** ) | **Jury Trial Demand** |
| **and Does 1-10,** ) | |
| ) | |
| *Defendants.* ) | |

## <u>COMPLAINT</u>

Plaintiff Michael "Mikey" Pauker (hereinafter "Plaintiff"), by and through his undersigned

counsel, hereby files this Complaint against Defendants Heart Consciousness Church, Inc., d/b/a Harbin

Hot Springs ('hereinafter "Harbin"), Derek Cyr, and Does 1-10 for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; and the Unruh Act, Cal. Civ. Code §§ 51, 52 to recover monetary damages, attorney's fees, costs and obtain injunctive and declaratory relief.[1]

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under, *inter alia*, 42 U.S.C. § 2000a and 42 U.S.C. §§ 1981 and 1982, laws of the United States, and all other claims are part of the same case or controversy pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants have conducted business in this judicial district and may be found conducting business in this judicial district.

## PARTIES

3.     Plaintiff Michael Pauker is a Jewish devotional rock musician who has released multiple albums and has performed across the United States, including at Harbin. It was a regular practice of Plaintiff to sell his merchandise at Harbin when he performed there.

4.     Defendant Heart Consciousness Church, Inc. owns and operates Harbin Hot Springs, located at 18424 Harbin Springs Rd., Middletown, CA 95461. Per its website, Harbin provides lodging to transient guests allowing individuals to book a stay for a "Day or Extended Visits, Camping and Lodging."[2] It is also a place of exhibition or entertainment, hosting hot springs, concerts, as well as "dances, yoga, moon

---

[1] Plaintiff notified the California Civil Rights Department ("CRD") of this action by providing a copy of this Complaint on or about the date it was filed, but Plaintiff only seeks relief from this Court and not any state or local agencies, as he made clear to the CRD.

[2] https://harbin.org/.

ceremonies, spiritual awakening recovery meetings, multi denominational holidays, celebrations and more."[3] When Harbin hosts concerts, the featured artists generally sell their merchandise at their shows.

5.     Defendant Derek Cyr, who may be using an alias, is an affiliate of Harbin whose address and other identifying details are unknown but relevant information can be obtained about him through discovery of Harbin. Cyr solicited Harbin to cancel Plaintiff's performance due to Plaintiff's support of and affiliation with Israel, Plaintiff's ancestral homeland.

6.     Does 1-10, like Cyr, solicited Harbin to cancel Plaintiff's performance due to Plaintiff's support of and affiliation with Israel. Relevant information about them can be obtained through discovery of Harbin.

## FACTS

### Plaintiff's Racial, Religious, and National Origin Ties to Israel

7.     Plaintiff is a Jewish-American musician who feels and publicly expresses a deep affinity for Israel, his ancestral homeland.

8.     While Plaintiff and his family have lived outside of Israel for countless generations, Plaintiff identifies Israel as his ultimate place of national origin. His racial and religious identities as a Jew are also intimately connected to Israel.

9.     Plaintiff's connection to Israel is neither idiosyncratic nor can it be chalked up to mere politics; it is at the core of what makes Plaintiff (and millions of others) Jewish. The Bible itself references this ancient Jewish hope[4] for return to the Jewish sovereign homeland while the Prophets and Writings of the Hebrew Bible repeatedly record this aspiration.[5] From a Jewish law perspective, over half of the Biblical

---

[3]*Id.*

[4]*See e.g.*, *Deuteronomy* 30:1-5.

[5]*See e.g.*, *Isaiah* 11:11-12; *Jeremiah* 29:14; 20:41-42; *Psalm* 126; *Psalm* 137.

commandments that religious Jewish people are bound to obey are specifically tied to the Jewish homeland.[6] From a doctrinal point of view, belief in and hope for the return to Zion (a term connoting at once a specific hill and fortress in Jerusalem, the city of Jerusalem, the Temple Mount, and Judea, the nation situated where Israel now exists for which Jews take their name) is literally part of the 13 Principles of Jewish Faith.[7]

10.    Indeed, the Jewish religion is predicated on the belief that God promised Abraham that he and his descendants shall live in and maintain sovereignty over the land of Israel,[8] and much of the narrative portions of the Torah and greater Jewish Bible, or Tanakh, detail the tribulations Jews experience when they do not have sovereignty over this land and their resulting struggle to achieve and maintain such sovereignty. Even from a purely secular perspective, this connection to Israel is a core feature of the cultural identity of those of Jewish national origin and race like Plaintiff. Whether one views Plaintiff's Judaism through the prism of religion, race, or national origin, Jewish sovereignty and self-determination in the land of Israel is core to all three identities.

11.    On October 7, 2023, as Hamas was still in the process of slaughtering 1,200 mostly Jewish individuals in Israel, Plaintiff posted an image of a military tank on his Facebook page with the words "I stand with Israel."[9] At the time Plaintiff made this post, Israel had not commenced its ground invasion of Gaza and Plaintiff posted this solely in support of Israel's right to defend itself and its citizens against the ongoing massacre.

---

[6] *About Us,* TORAH VEHA'ARETZ INSTITUTE, https://en.toraland.org.il/about/.

[7] *Maimonides Introduction to Perek Helek,* MAIMONIDES HERITAGE CENTER, https://www.mhcny.org/qt/1005.pdf. (explaining the 12th Fundamental Principle).

[8] Genesis 12:1-9.

[9] https://www.facebook.com/photo/?fbid=3206684566299058&set=a.1375842416049958.

12.     The concept of Jews fighting for their place in the land of Israel are as integral to Plaintiff's Jewish religion, race, and national origin as the land of Israel is itself. Indeed, from a Biblical perspective, the first Jewish army is described a mere two chapters after the Torah details God's promise of Israel to Abraham.[10]

**Harbin's Cancellation of Plaintiff's Concert**

13.     On November 30, 2024, Plaintiff emailed Harbin to propose that he perform a Hanukkah Concert. On December 10, 2024, the parties solidified the agreement and executed a contract for the performance.

14.     On or about December 19, 2024, Plaintiff saw that an anonymous user, now known to be Derek Cyr as described below, commented on Harbin's Facebook page that Plaintiff plays "genocide music" and said that civilians killed in Gaza are getting what they deserve. The post concluded with "Ask Harbin not to support genocide and cancel him!"

15.     Plaintiff does not play "genocide music." He did not say that civilians in Gaza deserved to be killed, much less its entire population or the entire population of Palestinians, and as a peace activist, Plaintiff has only spoken sympathetically about civilian casualties in Gaza.

16.     Also on December 19, 2024, Cyr direct messaged Plaintiff and repeated the false accusation that Plaintiff supports genocide and believes innocent people in Gaza deserve to die. (It appears Cyr was unaware that he messaged Plaintiff directly as he referred to Plaintiff in the third person.) Cyr repeated the claims he made in the not-so-anonymous Facebook post on Plaintiff's personal Facebook page. Cyr also responded to a public Facebook photograph of Plaintiff engaged in Jewish ritual with the comment "Devotional terrorist music."

---

[10]Genesis 14:14 ("And Avram heard that his kinsman had been taken captive, and he armed his trained men, those born in his house, three hundred and eighteen, and he pursued [them] until Dan").

17.     On December 20, 2024, at 8:59 AM PST, Kristen Long, Events Manager at Harbin, emailed Plaintiff to cancel the concert due to "unforeseen events," which included severe "negative feedback" and Harbin's desire to avoid politics and divisiveness, including violence coming from any party.

18.     As noted, Plaintiff's support of Israel's defense is not political but rather an integral component of his race, national origin, and religion. His Facebook post in support of Israel was centered solely on self-defense and not on perpetuating violence.

19.     Harbin did not consult with Plaintiff before canceling the event, nor did Harbin inquire about the nature of the Plaintiff's planned performance. Plaintiff's concert was a religious and cultural Chanukah event, not a political gathering, and Plaintiff had no plans of discussing the Israeli-Palestinian conflict at his concert.

20.     At 9:22 AM PST on December 20, 2024, Plaintiff received an email from Cyr, who celebrated the concert's cancellation, writing "Winner winner canceled dinner! Keep your psychotic Zionist genocidal shit out of our peaceful communities!!! I am watching you and will have canceled anywhere you go. Maybe you should just get the fuck out of here and go to 'Israel.' You are so proud of your 'country' and its genocidal war crimes why not go take part in them coward!!!" This confirmed that Cyr was at least one individual who had solicited Harbin to cancel Plaintiff's performance.

21.     At 9:56 AM PST on December 20, 2024, Plaintiff emailed Long, providing screenshots of the threats he received from Cyr and expressing concern that the cancellation was based on antisemitic complaints and harassment. Plaintiff requested an opportunity to discuss the matter further and clarify misinformation about his views. Plaintiff subsequently called Long, who said her boss would reach out to Plaintiff.

22.     At 2:26 PM PST on December 20, 2024, Linda Findley Jennings, Harbin's Senior Vice President, called Plaintiff and reiterated that Harbin was canceling the event due to community complaints about Plaintiff's "Zionist views." Findley referenced Plaintiff's October 7 post as a factor in Harbin's decision.

23. Jennings noted that complaints had been received from community members, including performers and presenters. Despite Plaintiff's assurance that he does not condone violence, Harbin maintained the cancellation, offering Plaintiff the option to visit Harbin but not perform.

24. During their conversation, Jennings made no mention of any security threats arising from Plaintiff's proposed concert and told him if he visited as a guest he did not have to worry about his safety.

25. Upon first hearing that Harbin intended to cancel his performance, Plaintiff experienced a panic attack. Plaintiff subsequently experienced a series of panic attacks after Cyr indicated he was "watching" Plaintiff, leading him to contact multiple law enforcement agencies, including the Orange County Police Department and the FBI. He also contacted the Israeli American Council (IAC), which provided trauma counseling. He received personal counseling from Rabbi Ora, Cantor Michael Kasper, and Rabbi Menachem Creditor, the latter advising Plaintiff to hire personal security.

26. As a result of the stress induced by falling victim to an antisemitic campaign of harassment and cancellation, Plaintiff has developed stress-induced GERD, which has cut his vocal range in half, severely threatening his career. Plaintiff's anxiety and depression from this experience has prevented him from completing his finals for school, delaying his academic progress and professional certification. He has also taken off from work, making it difficult for him to pay his bills. He also suffers from nightmares.

27. By canceling Plaintiff's concert, Harbin caused Plaintiff significant financial losses. Plaintiff normally sells about $1,500 worth of merchandise at his shows. The cancellation of Plaintiff's concert also generated substantial press and corresponding negative publicity, and a number of festivals that had invited Plaintiff to perform in the past did not reach out to him subsequent to this incident, causing an estimated $50,000 of losses in revenue.

**Harbin's double standard against Jews**

28. Harbin's claimed desire to avoid politics and divisiveness as the grounds for canceling Plaintiff's performance was false. Harbin has hosted a number of performers who, like Plaintiff, have taken

positions on the Israeli-Palestinian conflict, and unlike Plaintiff have done so in a racist (antisemitic) way,[11] thus speaking to a double standard on Harbin's part.

29.    For example, on June 9, 2024 Harbin hosted Shylah Ray Sunshine,[12] who has posted a photograph on Instagram of a burning Israeli flag and associated it with colonization (Jewish self-determination denial).[13] On May 30, 2024, Shylah Ray posted a reel on Instagram quoting Yahya Sinwar, the architect of October 7, comparing Israel's defensive war against Hamas to the death of George Floyd; denying the Holocaust; associating Israel with colonization; asserting "Zionists want to govern the world"; and warning people that Jews will move on from Gaza to conquer the rest of the world (Jews Control the

---

[11]Antisemitism is defined in detail by The International Holocaust Remembrance Alliance ("IHRA"), a multi-governmental organization with 35 member countries, including the United States, with a mission "to strengthen, advance and promote Holocaust education, remembrance, and research worldwide." *See* International Holocaust Remembrance Alliance, *About The International Holocaust Remembrance Alliance* (last visited Nov. 19, 2024), https://holocaustremembrance.com/who-we-are. Recognized as a "vital tool in the struggle against antisemitism" by the New York Governor's office (*See* Proclamation of Governor Kathy Hochul (Jun. 12, 2022), https://www.governor.ny.gov/sites/default/files/2022-06/IHRA_Antisemitism_Definition_Proclamation-2022.pdf), IHRA defines antisemitism as encompassing, inter alia, "making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions ("Jews Control the World Trope"); accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, or even for acts committed by non-Jews ("Collective Responsibility Trope"); denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor ("Jewish Self-Determination Denial"); using the symbols and images associated with classic antisemitism (e.g., claims of Jews killing Jesus or blood libel) to characterize Israel or Israelis ("Blood Libel Trope"); and drawing comparisons of contemporary Israeli policy to that of the Nazis ("Holocaust Inversion")." International Holocaust Remembrance Alliance, *Working Definition of Antisemitism* (last visited Nov. 19, 2024), https://holocaustremembrance.com/resources/working-definition-antisemitism (cleaned up). As of August 2024, 35 States and the District of Columbia have adopted IHRA, including Texas and New York. American Jewish Committee, *Use of the Working Definition in the U.S.* (last visited Nov. 19, 2024), https://www.ajc.org/use-of-the-working-definition-in-the-us.

[12]https://harbin.org/experience/events/#event=77566707;instance=20240609110000?popup=1&lang=en-US.

[13]https://www.instagram.com/p/DC71IhBytQi/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=3 (Nov. 28, 2024).

World Trope).[14] On May 24, 2024, she posted a reel that included a photograph of her holding a sign saying "from the river to the sea, Palestine will be free,"[15] a well-known taunt to wipe Israel off the map.[16] On March 12, 2024, she falsely accused Israel of genocide (Holocaust Inversion).[17] On January 9, 2024, she posted a video of herself participating in a disruptive anti-Israel protest while holding a sign accusing Israel of genocide and a photograph of her celebrating graffiti accusing Israel of being a terrorist state.[18] On November 14, 2023, she falsely accused Israel of genocide in several photos.[19] On October 18, 2023, she falsely accused Israel of genocide and posted a video calling supporters of Israel colonists.[20]

30.     Shylah Ray has also taken more mundane public political positions on Gaza subsequent to October 7. She posted a photograph of graffiti in Gaza thanking her for her support[21] and other graffiti supportive of Gaza.[22] She co-posted a Christmas message of "all I want for Christmas is a free

---

[14]https://www.instagram.com/reel/C7nJTW_vN2P/?utm_source=ig_web_copy_link&igsh=MzRlODBi NWFlZA%3D%3D (May 30, 2024).

[15]https://www.instagram.com/reel/C7PU2cypgrn/?utm_source=ig_web_copy_link&igsh=MzRlODBiN WFlZA%3D%3D (May 21, 2024).

[16]https://www.ajc.org/translatehate/From-the-River-to-the-Sea

[17]https://www.instagram.com/p/C3-tOfzOvT7/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Mar. 12, 2024).

[18]https://www.instagram.com/p/C15YrT6vXnK/?utm_source=ig_web_copy_link&igsh=MzRlODBiN WFlZA%3D%3D (Jan. 9, 2024).

[19]https://www.instagram.com/p/CzolLG0xs_-/?utm_source=ig_web_copy_link&img_index=4 (Nov. 14, 2023).

[20]https://www.instagram.com/reel/CykUMKzrPfL/?utm_source=ig_web_copy_link&igsh=MzRlODBi NWFlZA%3D%3D (Oct. 18, 2023).

[21]https://www.instagram.com/p/DElC-m6th3F/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=1 (Jan. 8, 2025).

[22]https://www.instagram.com/p/DFIYoj_ti-R/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Jan. 22, 2025).

Palestine."[23] She participated in fundraisers for Gaza.[24] She spoke at a political panel related to Gaza with Green Party vice presidential candidate Butch Ware.[25] She made a reel joining the #AllEyesonRafah campaign, which focused on Israel's campaign to root Hamas terrorists out of the Gazan city of Rafah.[26]

31.    On November 4, 2023, Harbin hosted Honey of the Heart (a Justin Ancheta and Maren Metke duo).[27] Ancheta produced and provided instrumentals to a Sophie Cooper song entitled "Forever Ceasefire," the description of which falsely accuses Israel of targeting civilians in Gaza and subjugating the Palestinian people.[28]

32.    On June 1, 2024, Harbin hosted Sass n Harmony (consisting of Heather Normandale, Maisha Lani, and Carolyn Herlehy).[29] On December 25, 2023, Normandale seemingly (and falsely) accused

---

[23]https://www.instagram.com/p/DDGGVVBSxwf/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Dec. 2, 2024).

[24]https://www.instagram.com/p/DCfEYEjTC9U/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Nov. 17, 2024); https://www.instagram.com/p/DCIV1kASHDr/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Nov. 8, 2024); https://www.instagram.com/reel/DCPSW-KSSIP/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Nov. 11, 2024); https://www.instagram.com/p/C4vtOo3PSf2/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Mar. 20, 2024); https://www.instagram.com/reel/C4baM6QyCtL/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (Mar. 12, 2024).

[25]https://www.instagram.com/p/DB-k0w8Mpj-/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=1 (Nov. 4, 2024).

[26]https://www.instagram.com/reel/C7eQXkUxrbE/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D (May 27, 2024).

[27]https://harbin.org/experience/events/#event=77046277;instance=20231104200000?popup=1&lang=en-US.

[28]https://sophiecoopermusic.bandcamp.com/track/forever-ceasefire.

[29]https://harbin.org/experience/events/#event=74239831;instance=20240601200000?popup=1&lang=en-US.

Israel of targeting civilians in a post in which she contributed a song to the "Mixtape for Palestine" project.[30]

33.   On February 14, 2025, Harbin hosted Scott Elliott Ferreter at their Deep Feeling Soulful Concert.[31] Ferreter has taken public political positions on the War in Gaza. For example, on December 12, 2023, he posted a song on Instagram in which he called on Israel to terminate its military efforts to root out Hamas and accept a ceasefire.[32] He reposted this song on June 11, 2024 and falsely accused Israel of genocide in the post's written caption.[33] On February 5, 2025, he posted political commentary critical of President Trump's proposal that the United States take over Gaza.

## COUNT I

### Violation of Title II of the Civil Rights Act of 1964

### 42 U.S.C. § 2000a

34.   Plaintiff incorporates paragraphs 1-33 as if they were stated fully herein.

35.   42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

---

[30]https://www.instagram.com/p/C1Q_RuOuMce/?utm_source=ig_web_copy_link&igsh=MzRlODBiN WFlZA%3D%3D (Dec. 25, 2023).

[31]https://harbin.org/experience/events/#event=77885365;instance=20250214200000?popup=1&lang=e n-US.

[32]https://www.instagram.com/reel/C0wjm_uJTpE/?utm_source=ig_web_copy_link&igsh=MzRlODBi NWFlZA%3D%3D (Dec. 12, 2023).

[33]https://www.instagram.com/reel/C8GFsk5vi79/?utm_source=ig_web_copy_link&igsh=MzRlODBiN WFlZA%3D%3D (Jun. 11, 2024).

36.    For purposes relevant here, places of public accommodation are statutorily defined as including "any inn, hotel, motel, or other establishment which provides lodging to transient guests" and any "concert hall . . . or other place of exhibition or entertainment." 42 U.S.C. § 2000a(b)(1); (3). Harbin provides lodging to transient guests, allowing individuals to book a stay for a "Day or Extended Visits, Camping and Lodging."[34] It is otherwise a place of exhibition or entertainment providing hot springs and a venue for concerts as well as "dances, yoga, moon ceremonies, spiritual awakening recovery meetings, multi-denominational holidays, celebrations and more."[35]

37.    42 U.S.C. § 2000a-2 reads in relevant part: "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title."

38.    Plaintiff's Jewish race, religion, and national origin—characteristics protected under § 2000a(a)—are inseparably connected to Zionism, the land of Israel, its people, its sovereignty, and its use of military actions to defend itself. Due to this connection and affinity, and Plaintiff's Jewish race, religion, and national origin, Harbin denied Plaintiff the right to the full and equal enjoyment of Harbin by cancelling his concert while allowing non-Jews without a related affinity to Israel to perform. In cancelling Plaintiff, Harbin's Findley directly cited Plaintiff's "Zionist views."

39.    Defendant Derek Cyr and Does 1-10 intimidated, threatened, and/or coerced and/or attempted to intimidate, threaten, or coerce Harbin into cancelling Plaintiff's concert because of Plaintiff's Jewish

---

[34]https://harbin.org/.

[35]*Id.*

race, religion, and national origin as inseparably connected Plaintiff's support of and affinity to Israel. These Defendants otherwise deprived and/or attempted to deprive Plaintiff of his right to hold a concert at Harbin. As detailed above, Cyr made clear to Plaintiff that he was aggressively pursuing Harbin on this matter and Harbin indicated to Plaintiff that this effort was coming from more than one direction.

40.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT II

Violation of the Civil Rights Act of 1866

42 U.S.C. § 1981

41.    Plaintiff incorporates paragraphs 1-40 as if they were stated fully herein.

42.    42 U.S.C. § 1981(a) reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

43.    42 U.S.C. § 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

44.    For purposes of section 1981, Plaintiff is a racially Jewish person within the jurisdiction of the United States who, because of his Jewish race, was unlawfully denied the same right to contract as white citizens, including but not limited to Scott Elliott Ferreter, when Harbin cancelled Plaintiff's concert. Plaintiff was prevented from performing or otherwise enjoying the benefits, privileges, terms, and conditions of his contract in a way white citizens like Ferreter were.

45.    The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976). Cyr and Does 1-10's soliciting, intimidating, threatening, and/or coercing Harbin to cancel Plaintiff's performance constitute racial

discrimination with respect to the rights enumerated under this statute as Plaintiff was targeted because of his actual and/or perceived Jewish race and inseparable characteristics like his support for and affinity to Israel. Cyr and Does 1-10 sought to effectuate the deprivation of Plaintiff's rights on the basis of his actual and/or perceived race, as evidenced by Cyr's public comments described above and Harbin's representations to Plaintiff about other individuals.

46.    Defendants also deprived Plaintiff of the ability to contract with third parties as he was unable to sell his merchandise at Harbin, a common practice for performers including Plaintiff at his prior Harbin performances.

47.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT III

Violation of the Civil Rights Act of 1866

42 U.S.C. § 1982

48.    Plaintiff incorporates paragraphs 1-47 as if they were stated fully herein.

49.    42 U.S.C. § 1982 reads "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

50.    For the purposes of section 1982, Plaintiff is a racially Jewish person within the jurisdiction of the United States who, because of his Jewish race, was unlawfully denied the same right to sell his merchandise as white citizens, including but not limited to Scott Elliott Ferreter, when Harbin cancelled Plaintiff's concert.

51.    The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976). Cyr and Does 1-10's soliciting,

intimidating, threatening, and/or coercing Harbin to cancel Plaintiff's performance constitute racial discrimination with respect to the rights enumerated under this statute as Plaintiff was targeted because of his actual and/or perceived Jewish race and inseparable characteristics like his support for and affinity to Israel. Cyr and Does 1-10 sought to effectuate the deprivation of Plaintiff's rights on the basis of his actual and/or perceived race, as evidenced by Cyr's public comments described above and Harbin's representations to Plaintiff about other individuals. As members of affiliates of Harbin, Cyr and Does 1-10 were aware that artists ordinarily sell merchandise when they perform at Harbin.

52.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT IV

### Violations of the Unruh Act

### Cal Civ Code §§ 51, 52

53.    Plaintiff incorporates paragraphs 1-52 as if they were stated fully herein.

54.    Cal Civ Code § 51(b) reads: "All persons within the jurisdiction of this state are free and equal, and no matter what their . . . race, . . . religion, ancestry, [or] national origin . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

55.    Plaintiff's Jewish race, religion, ancestry and national origin—characteristics protected under § 2000a(a)—are inseparably connected to Zionism, the land of Israel, its people, its sovereignty, and its use of military actions to defend itself. Due to this connection and affinity, and Plaintiff's Jewish race, religion, and national origin, Harbin denied Plaintiff the right to equal accommodation, advantages, facilities, privileges, and services by canceling his concert.

56.    Additionally, Cal Civ Code § 52(a) reads: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual

damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51[.]"

57.    Derek Cyr and Does 1-10 aided, incited, and/or made discriminatory distinctions against Plaintiff contrary to this statute when they solicited Harbin to cancel Plaintiff's concert because of his Jewish identity.

58.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A.    That the Court order Defendants to pay compensatory damages;

B.    That the Court order Defendants to pay punitive damages;

C.    That the Court enter judgment in favor of Plaintiff including injunctive relief requiring Defendants to permit Plaintiff to play at their venue and declaratory relief that it was unlawful for Harbin to cancel Plaintiff's concert and for Derek Cyr and Does 1-10 to solicit said cancellation;

D.    That the Court order Defendants to pay Plaintiff's reasonable attorney's fees, expert fees, and costs; and

E.    That the Court order Defendants to pay pre-judgment and post-judgment interest as provided by law.

///

///

///

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendants.


Date: March 28, 2025                              Respectfully submitted,

                                                  **National Jewish Advocacy Center, Inc.**

                                                  _/s/_        _Matthew Mainen_
                                                  Matthew Mainen
                                                  Maryland Bar No. 2012170265
                                                  *Pro Hac Vice Application Pending*
                                                  666 Harless Place
                                                  West Hempstead, NY 11552*
                                                  Phone:  (301) 814-9007
                                                  Email: matt@njaclaw.org
                                                  Attorney is not licensed and does not practice in New York; mail will be forwarded to him in Maryland.

                                                  **In Every Generation**
                                                  A division of Hershenson Rosenberg-Wohl, APC

                                                  _/s/ David M. Rosenberg-Wohl_