

**NATIONAL JEWISH ADVOCACY CENTER, INC.**
Matthew Mainen
Maryland Bar No. 2012170265
*Appearing Pro Hac Vice*
3 Times Square
New York, NY 10036*
Phone: (301) 814-9007
Email: matt@njaclaw.org
Counsel for Plaintiff
*Not licensed and does not practice in New York;
mail will be forwarded.

**IN EVERY GENERATION**
A division of Hershenson Rosenberg-Wohl, APC
David M. Rosenberg-Wohl (SBN 132924)
3080 Washington Street
San Francisco, CA 94115
Phone: (415) 317-7756
Email: david@hrw-law.com
Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Michael Pauker** )<br>)<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>)<br>**Heart Consciousness Church, Inc., Derek Cyr,**<br>**and Does 1-10,** )<br>)<br>)<br>*Defendants.* )<br>) | **Case No. 3:25-cv-02852 CJB**<br><br>**PLAINTIFF MICHAEL PAUKER'S**<br>**OPPOSITION TO DEFENDANT HEART**<br>**CONSCIOUSNESS CHURCH, INC.'S**<br>**MOTION TO DISMISS AND/OR STRIKE**<br><br>Hearing Date: August 29, 2025 |

**TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT……………………………    1

II.   SUMMARY OF FACTUAL BACKGROUND…………………………………    1

III.  STANDARD OF REVIEW………………………………………………………...    2

IV.   ARGUMENT………………………………………………………………………    3

    A.  Harbin discriminated against Plaintiff on the basis of his Jewish identity……    3

    B.  Harbin discriminated against Plaintiff by treating him differently than
       non-Jews…………………………………………………………………………    5

    C.  Plaintiff states a claim under Title II of the Civil Rights Act of 1964………...    6

    D.  Plaintiff states a claim under § 1981 of the Civil Rights Act of 1866………...    8

    E.  Plaintiff states a claim under § 1982 of the Civil Rights Act of 1866………...    9

    F.  Plaintiff states a claim under §§ 51 & 52  of the Unruh Act…………………    10

    G.  The First Amendment does not shield Harbin from Plaintiff's Claims……….    11

    H.  This Court should deny Harbin's Motion to Strike…………………………...    13

V.    CONCLUSION………………………………………………………………………    15

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023)................................................................ 12, 13

*Aholelei v. Dep't of Pub. Safety*,
   488 F.3d 1144  (9th Cir. 2007)............................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................... 3, 11

*Bellamy v. House*,
   2025 U.S. Dist. LEXIS 62200 (D.S.C. Apr. 1, 2025)................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................... 2, 11

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000)............................................................... 12, 13

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993)............................................................... 3

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
   77 F. Supp. 3d 850 (N.D. Cal. 2014)....................................... 13

*City of Memphis v. Greene*,
   451 U.S. 100 (1981)............................................................... 9

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994)..................................................... 3

*Conley v. Gibson*,
   355 U.S. 41 (1957)................................................................. 2, 3

*Denny v. Elizabeth Arden Salons, Inc.*,
   456 F.3d 427 (4th Cir. 2006).................................................. 7

*Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*,
   295 F.3d 1065 (10th Cir. 2002)............................................... 10

*Heyward v. 24 Hour Fitness*,
   2016 U.S. Dist. LEXIS 19306 (N.D. Cal. Feb. 17, 2016)................................... 6, 7

*Hecox v. Little*,
   79 F.4th 1009 (9th Cir. 2023) ........................................................ 3

*Heart of Atlanta Motel v. United States*,
   379 U.S. 241 (1964)................................................................. 13

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
   515 U.S. 557 (1995)............................................................. 12, 13

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977)................................................................. 14

*Jones v. Alfred H. Mayer Co.*
   392 U.S. 409 (1968)............................................................. 10, 13

*Lindsey v. SLT Los Angeles, LLC*,
   447 F.3d 1138 (9th Cir. 2006) ...................................................... 8

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................. 14

*Louis D. Brandeis Ctr., Inc. v. Regents of the Univ. of Cal.*,
   2025 U.S. Dist. LEXIS 62680  (N.D. Cal. Mar. 31, 2025)............................... 3

*Martin v. PGA Tour, Inc.*,
   204 F.3d 994 (9th Cir. 2000)...................................................... 8, 11

*Menkowitz v. Pottstown Memorial Medical Center*,
   154 F.3d 113 (3d Cir. 1998)........................................................ 8

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974)................................................................. 12

*Newman v. Piggie Park Enters., Inc.*,
   390 U.S. 400 (1968)................................................................. 14

*Ofuasia v. Spirit Halloween Superstores, LLC*,
   2022 U.S. App. LEXIS 29943 (9th Cir. Oct. 27, 2022)................................. 6

*Pac. Shores Props., LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) ..................................................... 3

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001)...................................................................... 7, 8, 11

*Pickern v. Holiday Quality Foods*,
    293 F.3d 1133 (9th Cir. 2002)................................................... 14

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984)...................................................................... 13

*Saint Francis Coll. v. Al-Khazraji*,
    481 U.S. 604 (1987)...................................................................... 5

*Shaare Tefila Congregation v. Cobb*,
    481 U.S. 615 (1987)...................................................................... 4, 5

*Sinai v. New Eng. Tel. & Tel. Co.*,
    3 F.3d 471 (1st Cir. 1993)........................................................ 5

*Turner Broad. Sys. v. FCC*,
    512 U.S. 622 (1994)...................................................................... 12, 13

*United States v. O'Brien*,
    391 U.S. 367 (1968)...................................................................... 13

*United States v. Washington*,
    759 F.2d 1353 (9th Cir. 1985)................................................... 14

*VR Sch. v. Cal. Dep't of Educ.*,
    2024 U.S. Dist. LEXIS 240382 (N.D. Cal. Sep. 20, 2024)........... 8

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015)...................................... 7

*Welsh v. Boy Scouts of Am.*,
    993 F.2d 1267 (7th Cir. 1993)................................................... 7

*Wooley v. Maynard*,
    430 U.S. 705 (1977)...................................................................... 12

**Statutes**

42 U.S.C. § 1981……………………………………………………………… 8, 9, 10, 13

42 U.S.C. § 1982……………………………………………………………... 9, 10, 13

42 U.S.C. § 2000a…………………………………………………………… 6, 7, 10, 14

42 U.S.C. § 12182(a)................................................................................... 7

Cal Civ Code § 51…………………………………………………………… 10

Cal Civ Code § 52…………………………………………………………… 10

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The FAC states claims for all causes of action under two theories of discrimination. First, Harbin directly discriminated against Plaintiff Michael Pauker because of his Jewish religion, race, and national origin (hereinafter "Plaintiff's Jewish identity") as indicated by Senior Vice President Linda Findley Jennings when she told Plaintiff "Harbin was canceling [Plaintiff's] event due to community complaints about Plaintiff's "Zionist views.'" FAC, ¶22. Plaintiff's Zionism is his sincerely held religious belief, a reflection of his national origin and race, an inseparable component of his Jewish identity, FAC ¶¶7-12, and otherwise a proxy for it. Second, even if Plaintiff's "Zionist views" are merely political—and they are not—Harbin discriminated against Plaintiff by treating him disparately in comparison to many non-Jews by permitting them but not Plaintiff to weigh in on the Israeli-Palestinian conflict, FAC ¶¶28-33, despite Harbin's policy of "avoid[ing] politics and divisiveness," as indicated by Events Manager Kristen Long. FAC ¶17. Harbin gave non-Jews a free pass to break neutrality and wade into what it considers divisively political but canceled Plaintiff for doing the same in his private capacity. This Court should therefore deny Harbin's Motion to Dismiss as well as its Motion to Strike because Plaintiff states a claim under 42 U.S.C. § 2000a, which permits equitable relief and effectuates an important Congressional mandate.

## II.    SUMMARY OF FACTUAL BACKGROUND

Plaintiff is a Jewish-American musician, FAC ¶3, and a Zionist, an ideology stemming from "an international movement originally for the establishment of a Jewish national or religious community in Palestine and later for the support of modern Israel."[1] Plaintiff's Jewish identity is "inseparably connected to Zionism," FAC ¶38, which is a religious imperative for Plaintiff and otherwise a "core feature of [his Jewish] cultural identity." FAC ¶¶38, 9-10. Consistent with this identity, "On October 7, 2023, as Hamas was still in the process of slaughtering 1,200 mostly Jewish individuals in Israel,

---

[1] https://www.merriam-webster.com/dictionary/Zionism

Plaintiff posted an image of a military tank on his Facebook page with the words "I stand with Israel.'" FAC ¶11. More than a year later, Derek Cyr learned that Plaintiff was scheduled to perform at Harbin and initiated a campaign to cancel Plaintiff's performance because of his Zionism. FAC ¶13-16. On December 17, 2024, "Kristen Long, Events Manager at Harbin, emailed Plaintiff to cancel the concert due to . . . severe 'negative feedback' and Harbin's desire to avoid politics and divisiveness, including violence coming from any party," FAC ¶17, with "violence" referring to the Israeli-Palestinian conflict and not threats of violence regarding Plaintiff's performance. FAC ¶24. Despite Harbin's purported neutrality policy on the Israeli-Palestinian conflict, Harbin allowed many non-Jews to perform, FAC ¶38, despite their extensive social media commentary on the allegedly forbidden subject, including one who quoted with approval Yahya Sinwar, the architect of the October 7 terrorist massacre. FAC ¶28-29. On December 20, 2024, "Linda Findley Jennings, Harbin's Senior Vice President, called Plaintiff and reiterated that Harbin was canceling the event due to community complaints about Plaintiff's 'Zionist views.' Findley referenced Plaintiff's October 7 post as a factor in Harbin's decision." FAC ¶22. In cancelling Plaintiff's concert, "Jennings made no mention of any security threats." *Id*. "As a result of the stress induced by falling victim to an antisemitic campaign of harassment and cancellation, Plaintiff has developed" health complications and financial strain. ¶25-27. Regarding finances, "[i]t was a regular practice of Plaintiff to sell his merchandise at Harbin when he performed there." FAC ¶3.

## III.    STANDARD OF REVIEW

To succeed on a motion to dismiss, a defendant must demonstrate that the plaintiff failed to furnish "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The complaint "does not need detailed factual allegations," but rather need only plead factual allegations, which if held as true, are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This rule "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*., at 555 quoting (*Conley* v. *Gibson*,

355 U.S. 41, 47 (1957)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Therefore, "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

## IV.   ARGUMENT

### A.  Harbin discriminated against Plaintiff on the basis of his Jewish identity

Plaintiff is a Zionist: someone who supports Israel, Jewish self-determination in Israel, and the Israeli people more broadly. While "[t]he Establishment Clause properly forbids the federal courts from saying what the tenets of a religion are . . . the Court may properly determine whether Zionism is a sincerely held religious belief for" Plaintiff. *Louis D. Brandeis Ctr., Inc. v. Regents of the Univ. of Cal.*, 2025 U.S. Dist. LEXIS 62680, at *5-6 (N.D. Cal. Mar. 31, 2025). At the current stage, this Court must accept Plaintiff's pleading that Zionism is his sincerely held religious belief and an expression of his overall Jewish identity. *See Clegg*, 18 F.3d at 754.

Discrimination on the basis of a sincerely held religious belief is unlawful. The Ninth Circuit, looking to the Supreme Court, aptly noted "[a] tax on wearing yarmulkes is a tax on Jews." *Hecox v. Little*, 79 F.4th 1009, 1024 (9th Cir. 2023) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993)). The same must hold for discriminating against those who observe the Sabbath, keep kosher, wear yarmulkes, or express their Jewish faith in other ways such as supporting Israel, a religious edict for Plaintiff. Discrimination on these bases, if not directly discriminatory, otherwise constitutes "[p]roxy discrimination," the use of "seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Hecox*, 79 F.4th at 1024-25 (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013)). Zionism is "so closely

associated with" Jews that to discriminate against them on this basis constitutes "facial discrimination against" Jews. By definition, Zionism involves both the Jewish nation—which in civil rights terms corresponds to race and national origin—and the Jewish religion.[2]

Even if "there are many persons of unquestioned Jewish faith who do not endorse, and who in fact strongly oppose, the Israeli government's actions in Palestine and Gaza," Def.'s Mot. at 7, Plaintiff was not canceled for supporting Israel's War in Gaza or its relations with the Palestinians. When Plaintiff posted "I stand with Israel" on October 7, the worst massacre of Jews since the Holocaust was unfolding and the Israeli military was repelling the massacre. Moreover, Findley Jennings expressly attributed Plaintiff's cancellation to his "Zionist views," *not* the war. Harbin's assertion that the "FAC is a claim that he has been discriminated against based on his political views regarding Israel's current policy toward Gaza and Palestine" is therefore totally inaccurate. Def.'s Mot. at 10.

If the frequency of traits in the Jewish community determines what constitutes a proxy for Jews, "Zionist views" is the appropriate trait here, even if not all Jews are Zionists as Harbin hints. 82% of "U.S. Jews say caring about Israel is an important or essential part of what being Jewish means to them," 58% are "emotionally attached to Israel," and 32% believe "God gave the land that is now Israel to the Jewish people."[3] In comparison only 17% keep kosher at home[4] and "[o]n a typical day," 20% "wear something that is distinctively Jewish, such as a kippa (yarmulke)."[5] As yarmulkes are for men and the query included other Jewish articles, less than 10% wear yarmulkes. If numerosity determines proxy status for a protected characteristic, then Zionism more than fits the bill.

By targeting Plaintiff for his sincerely held religious belief, Harbin equally targeted Plaintiff on the basis of his race and national origin. Jewish identities intersect and encapsulate one another. In *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987), the Supreme Court considered whether an

---

[2] *supra* n.1, defining Zionism to involve a "Jewish national or religious" concern.
[3] https://www.pewresearch.org/religion/2021/05/11/u-s-jews-connections-with-and-attitudes-toward-israel/
[4] https://www.pewresearch.org/religion/2021/05/11/jewish-practices-and-customs/
[5] https://www.pewresearch.org/religion/wp-content/uploads/sites/7/2021/04/PF_05.11.21.Jewish_Survey_Topline.pdf at 35.

attack on a synagogue—by definition centering on religion—sounded in the Civil Rights Act of 1866, whose protections center on race, including "ancestry or ethnic characteristics," *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987), but not religion. The Supreme Court answered in the affirmative, noting "Jews . . . were among the peoples then considered to be distinct races and hence within the protection of the statute." *Shaare Tefila*, 481 U.S. at 617-18, (1987). Under *Shaare Tefila*, discriminating against Jews on the basis of their religion therefore necessarily entails discrimination on the basis of their race and by implication national origin as courts recognize Jewish race and national origin as largely overlapping. *See Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 474 (1st Cir. 1993). Any trait that could be the object of antisemitic religious discrimination, such as Plaintiff's Zionism, must also be the object of antisemitic racial and national origin discrimination. Therefore, Harbin discriminated against Plaintiff with respect to all three.

**B. Harbin discriminated against Plaintiff by treating him differently than non-Jews**

The FAC clarifies Plaintiff's Zionism cannot "be chalked up to mere politics" and is at the core of what makes Plaintiff . . . Jewish." ¶9. Harbin, however, has framed this issue as political from the outset, FAC ¶17, in justifying Plaintiff's bans on grounds of a supposed political neutrality policy. Def.'s Mot. at 7. Under the heading "Harbin's double standard against Jews"—indicating those treated more favorably were non-Jews—the FAC identifies many non-Jewish performers that have taken public positions on the Israeli-Palestinian conflict like Plaintiff but were not penalized. ¶¶28-33. Therefore, even if targeting Plaintiff for "Zionist views" is not unlawful—and it is—Plaintiff pled disparate treatment in comparison to non-Jewish comparators, establishing a second theory of liability based on circumstantial evidence that does not hinge on the comparators' views; Harbin permitting a non-Jewish artist to perform despite public pro-Israel views would equally make Plaintiff's case.

Harbin points to several instances where the FAC supposedly concedes that taking positions on the Israeli-Palestinian conflict is political, specifically Plaintiff's discussion of comparators, but misses

the point. Def.'s Mot. at 9-10. The FAC pleads these individuals are not Jewish, ¶38, and therefore their religious, racial and national origin identities are not inherently linked to Zionism like Plaintiff's. The FAC also clarifies that some comparators have taken positions on the conflict "in a racist (antisemitic) way," ¶28, suggesting possible antisemitic animus on Harbin's part by hosting them, further coloring their decision to cancel Plaintiff.

Ultimately, it is axiomatic that "in light of the liberal pleading policy embodied in Rule 8 . . . a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1149 (9th Cir. 2007). While Plaintiff never concedes that *his* Zionism and ensuing positions on the Israeli-Palestinian conflict are political—and in fact argues the contrary at length, FAC ¶¶7-12—he is entitled to accept arguendo and plead Harbin's characterization of this issue to discredit its purported non-discriminatory reason for Plaintiff's cancellation. Plaintiff's second liability theory is ultimately "analyze[d] . . . under the *McDonnell Douglas* burden-shifting framework," which often hinges on whether a defendant has "legitimate, nondiscriminatory reason for its actions" and whether the plaintiff can "show that the proffered reason was a pretext for intentional discrimination." *Ofuasia v. Spirit Halloween Superstores, LLC*, 2022 U.S. App. LEXIS 29943, at *2 (9th Cir. Oct. 27, 2022). Political neutrality served only as pretext for Harbin's discrimination.

### C.  Plaintiff states a claim under Title II of the Civil Rights Act of 1964

Plaintiff states a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, by pleading (1) Harbin is a place of public accommodation, FAC ¶¶4, 36; (2) he was denied equal enjoyment of Harbin, FAC ¶¶17, 22, 38; and (3) this denial of equal enjoyment was grounded in Plaintiff's race, religion, and national origin, FAC ¶¶22, 38 (direct evidence of discrimination because Plaintiff was canceled for his "Zionist views"); & FAC ¶¶ 28-33, 38 (circumstantial evidence of discrimination because non-Jews were treated more favorably). *See Heyward v. 24 Hour Fitness*, 2016

U.S. Dist. LEXIS 19306, at *5 (N.D. Cal. Feb. 17, 2016).

Harbin challenges Plaintiff's pleading the public accommodation element by looking out-of-circuit and noting "'a salon,' and by implication a hot springs retreat center such as that operated by Harbin, is not a 'place of entertainment' under Title II.'" Def.'s Mot. at 13 (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (cleaned up). This ignores the FAC's pleading that, *inter alia*, Harbin serves as a concert venue, rendering it either a "concert hall" or "place of exhibition or entertainment," and it is an establishment that "provides lodging to transient guests," FAC ¶4, bringing Harbin under the ambit of 42 U.S.C. § 2000a(b). *Denny* itself acknowledged a place of entertainment is where people hear music, referencing a "symphony." 456 F.3d at 432. This Court may also judicially notice innumerable photographs of Harbin online showcasing swimming pools, including the backdrop of its official homepage, reinforcing that Harbin is a place of entertainment.[6]

Harbin again looks out-of-circuit to argue "Title II applies to access to public accommodations, not contractual performance agreements" in challenging Plaintiff's pleading the denial of equal access element. Def.'s Mot. at 12 (citing *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1270 (7th Cir. 1993)). The two are not mutually exclusive, and *Welsh* answered whether an "organization is a place of public accommodation" when untethered to a physical location, a very different issue. *Welsh*, 993 F.2d at 1268.

To the extent that Harbin argues Title II does not apply because Plaintiff was a performer and not a customer, the Ninth Circuit held otherwise in analyzing Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a)—that statute's public accommodations analog—finding no "basis for distinguishing between 'use of a place of public accommodation for pleasure and use in the pursuit of a living.'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 673, (2001)

---

[6] *See, e.g.*, https://harbin.org/. Under F.R.E. 201(b)(2), this "court may judicially notice a fact that is not subject to reasonable dispute because it: can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (taking judicial notice of party's website).

(quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 999 (9th Cir. 2000)). The Ninth Circuit also cited with approval a case "reject[ing] the argument that Title III could be invoked only by the patients of a hospital, and held that denial of staff privileges qualified as a denial of" public accommodations. *Martin*, 204 F.3d at 998 (citing *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113 (3d Cir. 1998)). Therefore, it is immaterial that "[t]he FAC does not allege Harbin denied Plaintiff access to its facilities as a member of the public." Def.'s Mot. at 13. In deciding *Martin* on appeal, the Supreme Court clarified that Title III of the ADA is "analogous . . . [to] Title II of the Civil Rights Act of 1964." *Martin*, 532 U.S. at 681. This Court may therefore use *Martin* to decide this matter.

Harbin challenges Plaintiff's pleading the discriminatory motive element by reasserting its argument that discriminating against Plaintiff because of his "Zionist views" at most amounted to lawful political discrimination. However, none of the political discrimination cases Harbin cites, Def.'s Mot. at 12, center on a characteristic that is "inseparably connected" to protected identities, FAC ¶38, or otherwise a proxy as Zionism is for Jewish identity. Harbin also makes no meaningful attempt to explain how, even if Plaintiff's Zionism is purely political, it did not discriminate against Plaintiff by applying its purported neutrality policy to Plaintiff, a Jew, but not to the many non-Jewish comparators.

### D.  Plaintiff states a claim under § 1981 of the Civil Rights Act of 1866

Plaintiff states a claim under § 1981 of Civil Rights Act of 1866, by pleading (1) he belongs to a racial group, FAC ¶3; (2) he attempted to form or sustain a contract, ¶13;  (3) he was denied a contract or its benefits, FAC ¶17-24; and (4) he was treated less favorably than similarly-situated individuals outside his racial group, FAC ¶28-33. *See VR Sch. v. Cal. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 240382, *10 (N.D. Cal. Sep. 20, 2024) (citing *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006)). The fourth element is sufficient but not necessary here because Plaintiff also alleges direct discrimination—he was canceled for his "Zionist views," rendering circumstantial evidence of discrimination unnecessary.

Harbin argues that Plaintiff's "claim fails because § 1981 applies only to racial discrimination," but at most Harbin discriminated against Plaintiff because of politics. Def.'s Mot. at 13-14. However, the above analysis on *Shaare Tefila* resolves this claim for Plaintiff because Jews are a race protected by § 1981 and discriminating against Jews on the basis of religion and ethnic identity—in this case Plaintiff's Zionism—translates to racial discrimination. Zionism is otherwise so closely associated with the Jewish race that it is a proxy for Jews as also detailed above. There is nothing "conclusory" or "threadbare," Def.'s Mot. at 14, about the FAC's extensive detail on Plaintiff's Jewish identity and specific pleading that Harbin targeted him on that basis and otherwise treated him adversely compared to non-Jewish comparators. Harbin also misconstrues Plaintiff's comparator pleading as centering on Harbin "allow[ing] other performers, who expressed political opposition to the Israeli Government's policies and actions in its conflict with Palestinians, to perform at Harbin." Def.'s Mot. at 14. Again, the disparate treatment centers not on the content of the comparators' views but on their race. Harbin applied a neutrality policy only to Plaintiff, a Jew, but not to non-Jewish comparators including Scott Fereter, a white citizen, whose race is mentioned in tracking the statute's language. Therefore, Plaintiff states this claim under both direct and indirect theories of discrimination.

### E.  Plaintiff states a claim under § 1982 of the Civil Rights Act of 1866

Plaintiff states a claim under § 1982 of Civil Rights Act of 1866, by pleading (1) he is a member of a racial group, FAC ¶3; (2) Harbin interfered with his right to sell merchandise, FAC ¶27; and (3) this interference was because of Plaintiff's Jewish race, FAC ¶¶22, 28-33. *See* Def.'s Mot. at 15 (citing *City of Memphis v. Greene*, 451 U.S. 100, 120-22 (1981)). Harbin argues that "the cancellation of a performance does not implicate any right to . . . sell . . . personal property that is the subject of § 1982," *id*., but canceling Plaintiff's performance entailed or was otherwise coupled with canceling his opportunity to sell merchandise and therefore "involve[d] real or personal property transactions." *Id*.

(citing *Jones v. Alfred H. Mayer Co.* 392 U.S. 409, 413 (1968)). Harbin's case law attempting to analogize Plaintiff's case to inactionable employment claims, *id.* at 15-16, is therefore inapposite.

Harbin incorrectly notes "Section 1982 does not require a private business to permit a musician . . . to sell his own merchandise on its property." Def.'s Mot at 16. It does when the business routinely affords others that opportunity. *See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1073 (10th Cir. 2002) (upholding verdict for black-owned business in § 1982 case involving denial of retail space). Just as the statute ensures minorities "the freedom to buy whatever a white man can buy," *Jones*, 392 U.S. 409 at 443 (1968), it must ensure their freedom to buy wherever others buy and sell wherever others sell. Harbin denied Plaintiff this freedom by permitting non-Jewish artists a pathway to merchandise sales but not Plaintiff.

Harbin correctly notes "[t]he only substantial difference between sections 1981 and 1982 is that one deals with contracts and the other with property." *Id* at 15. As Plaintiff successfully states a § 1981 claim and also pleads an interference with property rights, he necessarily states a § 1982 claim. There is nothing "conclusory" or "boilerplate," Def.'s Mot. at 15, about the FAC's extensive detail on Plaintiff's Jewish identity, FAC ¶¶7-12, and specific pleading that Harbin directly targeted him on that basis, FAC ¶22, and otherwise treated him adversely compared to non-Jewish comparators in the right to sell merchandise. FAC ¶¶4, 28-33.

### F.  Plaintiff states a claim under §§ 51 & 52  of the Unruh Act

Plaintiff states a claim under §§ 51 & 52 of the Unruh Act by pleading the same set of facts that states a claim under 42 U.S.C. § 2000a. Both protect Plaintiff by guaranteeing equal access to public accommodations regardless of race, religion, and national origin. Cal Civ Code § 51(b). The Unruh Act is more expansive in several respects, including its application to "all business establishments," *id.*, whereas Plaintiff's Title II claim required pleading Harbin fits certain categories. In stating a claim for the more burdensome Title II, Plaintiff states a claim under the Unruh Act. All arguments made above

regarding Title II apply here. Therefore, Harbin's focus on granting Plaintiff "guest access" in arguing there was no public accommodations denial, Def.'s Mot. at 17, is undermined by *Martin*. Just as public accommodations law granted Martin a right to play at the PGA Tour, it gives Plaintiff the right to perform at Harbin. If playing at the PGA Tour is open to the general public because of open tryouts, *Martin*, 532 U.S. at 680, performing at Harbin is too because anyone can pitch Harbin via email like Plaintiff. FAC ¶13.

Harbin's argument that this claim "recit[es] nearly verbatim the boilerplate language of Counts I, II, and III" and otherwise "fails to satisfy the requirements of *Iqbal/Twombly*," Def.'s Mot. at 17, ignores this claim incorporating all prior paragraphs, FAC ¶53, including those discussing Harbin explicitly targeting Plaintiff because of his Jewish identity (or a proxy for it) and otherwise treating him differently than comparators. Harbin also misconstrues its justification in cancelling Plaintiff as "avoid[ing] potential political divisiveness and violence." Def.'s Mot. at 17. Harbin indicated a selectively applied policy of political neutrality, including violence in the Israeli-Palestinian conflict, FAC ¶17, but never suggested threats of violence if Plaintiff performed and assured Plaintiff of his safety. FAC ¶24. Harbin's neutrality policy is the basis for Plaintiff's disparate treatment claim—as Harbin permitted many non-Jews to break neutrality—and is alternatively a false pretext for discrimination as Harbin hosted non-Jews with far more inflammatory social media including Hamas apologist Shylah Ray Sunshine. FAC ¶29.

### G.  The First Amendment does not shield Harbin from Plaintiff's claims

Harbin justifies Plaintiff's cancellation through its "First Amendment right to refrain from endorsing either side of the Israeli-Palestinian conflict." Def.'s Mot. at 7. The FAC discredits this position entirely by identifying many non-Jews who took sides but were not canceled, indicating neutrality is mere pretext for unlawful discrimination. Plaintiff otherwise "had no plans of discussing the Israeli-Palestinian conflict at his concert," FAC ¶19, and the FAC nowhere indicates Harbin

believed Plaintiff would. He was canceled for who he is, not what he did. Harbin booked Plaintiff because it was obviously onboard with his concert's content, rendering all but one of Harbin's cases, Def.'s Mot. at 18, immediately unhelpful because they speak at most to Harbin's right to control content *at its venue* not Plaintiff's *out-of-venue* Jewish identity and public expression of such. *See Wooley v. Maynard*, 430 U.S. 705 (1977) (state cannot force license plate mottos onto unwilling drivers); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 566, 570 (1995) (state cannot compel parade "to admit" group "expressing a message not of the private organizers' own choosing" including "a shamrock-strewn banner with the simple inscription 'Irish American Gay, Lesbian and Bisexual Group of Boston'"); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (state cannot force designer to create website celebrating gay marriage); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974) (state cannot force newspaper to publish editorial replies).

Harbin's final case, *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000), is even less on point, recognizing a First Amendment right to exclude individuals from organizations, such as a homosexual from Boy Scouts leadership, "if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Id*. at 648. But Harbin claims no viewpoint in proclaiming neutrality and acknowledges Plaintiff is welcome there. Def.'s Mot. at 13 (citing FAC ¶23). *Dale* also centered on the Scout's aim to express and impart certain values onto youth "both expressly and by example" through scoutmaster mentorship, *id*. at 651, a situation disanalogous from Plaintiff's one-off concert.[7]

In *Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994), the Supreme Court noted "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny" and applied this standard in requiring cable operators to carry broadcast channels against their First Amendment

---

[7] *Dale* also required a fact-intensive inquiry on "whether the group engages in 'expressive association'" and the adverse impact of "forced inclusion," 530 U.S. at 648-54, considerations not determinable at this stage as nothing in the pleadings indicates Harbin's purpose for existence or how it is undermined by Plaintiff's Jewish identity.

objections. *Id*. at 642, 661-62. "[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral." *Id*. at 643. Plaintiff relies on laws unconcerned with views and ideas and instead center on civil rights. Assuming Harbin is a speaker, intermediate scrutiny applies at most. Plaintiff's only burden is showing that finding for him "furthers an important or substantial governmental interest" and affirmatively answering "if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id*. at 622 (quoting *United States* v. *O'Brien,* 391 U.S. 367, 377 (1968)).

Eliminating discrimination in commerce via the Commerce Clause—the basis of Title II, *See Heart of Atlanta Motel v. United States*, 379 U.S. 241 (1964)—and eliminating all "badges and the incidents of slavery" pursuant to the Thirteenth Amendment, *Jones*, 392 U.S. at 437-44—the basis of 42 U.S.C. §§ 1981 and 1982, are undoubtedly important and substantial government interests and would even satisfy the heightened "compelling interest" standard of strict scrutiny. *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984). There can also be no dispute these statutes are content neutral and applying them here burdens the First Amendment minimally, if at all, as Harbin never objected to the actual expected content of Plaintiff's concert. Finally, all of Harbin's public accommodations cases—*303 Creative*, *Hurley*, and *Dale*—center on sexual orientation, which is not protected under the 13th Amendment, and state law. These cases may be less informative when balancing the First Amendment against racial protections guaranteed by the Constitution.

### H. This Court should deny Harbin's Motion to Strike

Harbin moves to strike Plaintiff's request for declaratory and injunctive relief. "Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Sys., Inc*., 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014). Plaintiff's requested relief is appropriate because Title II limits

relief to "permanent or temporary injunction, restraining order, or other order" and attorneys' fees. 42 U.S.C. § 2000a-3(a). This includes declaratory relief. *Bellamy v. House*, 2025 U.S. Dist. LEXIS 62200, at *2-3 (D.S.C. Apr. 1, 2025). "When a plaintiff brings an action under" Title II, "he does so . . . as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968). Declaratory relief therefore "serves an independent purpose beyond the resolution of claims for damages," Def.'s Mot. at 19 (citing *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985)), not only because damages are unavailable. Plaintiff is carrying out a unique mandate by seeking relief via declaration of his civil rights, which cannot be considered redundant or duplicative of his pursuit of damages through other statutes.

Harbin's request to strike Plaintiff's request for injunctive relief is also misplaced. It is untrue that "Plaintiff has not identified any 'sufficiently real and immediate' threat that he will be subject to the same harm again." Def.'s Mot. at 20 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). The FAC pleads (1) that Zionism is indelibly part of Plaintiff's identity and (2) Harbin has a "politics" policy amounting to a Zionist ban. Neither Plaintiff's Zionism nor Harbin's policy are going anywhere. "If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). The same applies here. Plaintiff "is currently deterred from patronizing" and contracting with "a public accommodation due to" Harbin's "failure to comply with" civil rights law and therefore "has suffered 'actual harm.'" *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1138 (9th Cir. 2002). Harbin argues "[i]rreparable harm must be explicitly alleged and supported by specific facts, not merely inferred," but none of its cited cases assert that this is a requirement at the minimally burdensome pleading stage or even involve a motion to strike a request for injunctive relief. Def.'s Mot. at 20. Plaintiff more than

alleges requisite harm as described above and well supported by Ninth Circuit and Supreme Court authority.

Harbin's challenge to Plaintiff's request for injunctive relief also underscores his need for declaratory relief: if this Court credits that challenge but finds Harbin violated his Title II rights, then declaratory relief is the only meaningful avenue to vindicate his statutory rights.

## V.    CONCLUSION

For the above stated reasons, this Court should deny Harbin's Motion in full.


**Date**: July 8, 2025                                    Respectfully submitted,

                                                          **National Jewish Advocacy Center, Inc.**

                                                          ___/s/_____*Matthew Mainen*___

                                                          **In Every Generation**
                                                          A division of Hershenson Rosenberg-Wohl, APC

                                                          ___/s/ David M. Rosenberg-Wohl___


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 8th day of July 2025 a copy of the foregoing was served electronically via the Court's e-filing system on all counsel of record.


                                                    _____*/s/  Matthew Mainen*___
                                                          Matthew Mainen