1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL PAUKER,

    Plaintiff,

v.

HEART CONSCIOUSNESS CHURCH, INC., et al.,

    Defendants.

Case No.  25-cv-02852-CRB

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Michael Pauker is a Jewish musician who contracted with Harbin Hot Springs ("Harbin"), an event venue with lodging, to perform at a Hanukkah concert.  FAC (dkt. 2) ¶¶ 3–4, 13.  After Pauker made a Facebook post in support of Israel, Harbin cancelled the contract, citing concerns with political divisiveness and violence stemming from a community reaction to the post.  Id. ¶¶ 11, 17, 22.  Alleging that his Zionist beliefs are inextricably tied to his racial and religious identity, Pauker brought an action for racial and religious discrimination against Heart Consciousness Church, Inc. ("Heart"), the owner and operator of Harbin, and Derek Cyr, an individual who purportedly attacked Pauker online and raised issues with his scheduled performance at Harbin.  Id. ¶¶ 8.  Heart filed a motion to dismiss, arguing that Pauker's allegations fail to state claims for racial or religious discrimination.  Mot. (dkt. 16) at 7.  The Court grants the motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Pauker is a Jewish devotional rock musician who performs across the country.  FAC ¶ 3.  In November 2024, Pauker proposed a Hanukkah concert at Harbin, a venue where he had performed many times before and sold his merchandise.  Id. ¶ 3, 13.  In December,

Pauker signed a contract with Harbin for the performance.  Id.  Shortly after, Pauker began to receive messages on social media from a user named Derek Cyr.  Id. ¶ 14.  In 2023, Pauker had made a Facebook post in support of Israel following the Hamas attack on Israel on October 7.  Id. ¶ 11.  Cyr's messages were highly critical of Pauker.  Cyr said Pauker played "genocide music" and that Harbin should cancel Pauker.  Id. ¶ 14.  The social media harassment continued on public pages, with accusations of Pauker supporting the death of innocents.  Id. ¶ 16.

Following Cyr's social media posts, Harbin notified Pauker that it was going to cancel Pauker's performance due to "unforeseen events," such as "severe 'negative feedback' and Harbin's desire to avoid politics and divisiveness, including violence coming from any party."  FAC ¶ 17.  After the cancellation, Cyr messaged Pauker, stating he was glad that Pauker would not be performing and that he would cancel Pauker wherever he went due to his alleged genocidal support.  Id. at 20.  Concerned, Pauker shared the messages with Harbin.  Id. at 21.  Harbin reiterated that the event was cancelled "due to community complaints about [Pauker's] 'Zionist views,'" including Pauker's post regarding October 7.  Id. at 22.  Harbin told Pauker that the complaints were "from community members, including performers and presenters."  Id. at 23.  While Harbin did not budge on cancellation, Harbin said Pauker could still visit the facilities, even if he could not perform.  Id.

Pauker alleges the cancellation—and online harassment—caused him severe stress and affected his ability to sing.  FAC ¶¶ 25–26.  He alleges that his depression has affected his academics and ability to get further work.  Id. ¶ 26.  Pauker claims he has incurred financial loss as he is unable to sell his merchandise at shows and has had trouble booking other performances after the negative publicity.  Id. ¶ 27.  As a result, Pauker sued Harbin and Cyr.  See FAC.  Pauker alleges that Harbin engaged in a double standard by cancelling him while having platformed many other performers who also posted about the Israeli-Palestinian conflict, but in support of Palestinians.  Id. ¶¶ 28–33.  Pauker does not allege that Harbin was aware of any of these alleged statements or social media posts.

Pauker brings four claims—all premised on discrimination of either race or religion:

- Violation of 42 U.S.C. § 2000a(a):  Harbin denied Pauker the right to the full and equal enjoyment of Harbin on account of his race and religion.  FAC ¶¶ 34–40.

- Violation of 42 U.S.C. § 1981:  Harbin denied Pauker equal contract rights due to his race.  Id. ¶¶ 41–47.

- Violation of 42 U.S.C. § 1982:  Harbin denied Pauker equal property rights by preventing him from selling merchandise on account of his race.  Id. ¶¶ 48–52.

- Violation of Cal. Civ. Code §§ 51, 52 (Unruh Act):  Harbin denied Pauker full and equal accommodations and services due to his race and religion.  Id. ¶¶ 53–58.

Pauker seeks compensatory damages, punitive damages, injunctive relief, and declaratory relief.  FAC at 16 (Prayer for Relief).  Additionally, Pauker requests fees and costs.  Id.

Heart moves to dismiss, arguing that Pauker fails to allege religious or racial discrimination as a matter of law.  See Mot. at 7.  Heart also argues that the First Amendment serves as a bar to suit, since civil rights laws cannot compel Harbin to endorse Pauker's speech regarding Israel.  Id. at 17.  In the alternative, Heart moves to strike Pauker's prayers for injunctive and declaratory relief as redundant and immaterial.  Id. at 18.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.

United States District Court
Northern District of California

3

1    2d 868 (2009) (citation omitted).  Courts are not "required to accept as true allegations that

2    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

3    Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1008 (9th Cir. 2018) (internal citation

4    omitted).

5    **III.    DISCUSSION**

6         The Court grants Heart's motion to dismiss.[1]  All of Pauker's claims require at least

7    racial or religious discrimination to be actionable.  But the allegations in Pauker's

8    complaint fail to raise a reasonable inference of such discrimination.  To the contrary, the

9    complaint offers an alternative basis for Harbin's decision to cancel Pauker's performance:

10   a severe, negative community reaction.  For that reason, among others, Pauker fails to state

11   a claim upon which relief could be granted.

12        **A.    Lack of Discrimination for Race or Religion**

13        The parties differ on whether Pauker's Facebook post implicates his religion or

14   race.  Pauker centers his allegations on his Zionist beliefs—insisting that Zionism is a

15   proxy for Judaism or Jewish racial identity.  Opp. (dkt. 19) at 3.  Heart rejects this

16   argument, contending that Zionism is purely political.  Reply (dkt. 20) at 5.  The Court

17   notes that the relationship between Zionism and Judaism is "hotly disputed."  Mandel v.

18   Bd. of Trs. of California State Univ., No. 17-CV-03511, 2018 WL 5458739, at *22 (N.D.

19   Cal. Oct. 29, 2018).  As this is a motion to dismiss, the Court assumes Pauker is right.  Cf.

20   Bolden-Hardge v. Off. of California State Controller, 63 F.4th 1215, 1223 (9th Cir. 2023)

21   (courts are "cautioned against second-guessing the reasonableness of an individual's

22   assertion that a requirement burdens her religious beliefs).  But parsing this issue is

23   ultimately unnecessary because Heart is correct that Pauker fails to allege Harbin targeted

24   him because he is Jewish.  Reply at 5.

25        The complaint fails to raise a reasonable inference of racial or religious

26   discrimination.  Pauker specifically alleges that Harbin told him it was cancelling his

United States District Court
Northern District of California

---

[1] Because Heart's motion to dismiss is granted, Heart's motion to strike is moot.

1    performance to avoid "politics and divisiveness, including violence coming from any

2    party." FAC ¶ 17.  Harbin grounded its decision in unforeseen events and "severe

3    'negative feedback.'"  Id.  Pauker alleges that Harbin reiterated it was "canceling the event

4    due to community complaints about" Pauker's Zionism, particularly his Facebook post.

5    Id. ¶ 22 (emphasis added).  Harbin conveyed that the backlash to Pauker was widespread

6    and came from "community members, including performers and presenters."  Id. ¶ 23.

7    Pauker does not allege that Harbin's stated reasoning was pretextual or that Harbin

8    commented critically on his beliefs or Jewish faith.

9        The timeline further undercuts Pauker's position.  Pauker admits that he has

10    performed at Harbin before, without noting any prior issues.  FAC ¶ 3.  And Pauker alleges

11    that Harbin willingly contracted with him to "perform a Hanukkah Concert."  Id. ¶ 13.  It

12    was only 10 days after the agreement, when Harbin is alleged to have received many

13    complaints regarding Pauker, that Harbin cancelled the performance.  Id. ¶ 17.  And

14    Harbin did not seek to keep Pauker from the venue—Pauker was offered "the option to

15    visit Harbin" despite the cancellation.  Id. ¶ 23.  Such alleged conduct, particularly when

16    Harbin agreed to platform a Jewish artist to celebrate a Jewish festival, is not enough to

17    reasonably infer that "Harbin explicitly target[ed] [Pauker] because of his Jewish identity."

18    Opp. at 11.  The only allegations of direct anti-Jewish animus involve Cyr, not Harbin.

19        Nevertheless, Pauker attempts to allege "disparate treatment in comparison to non-

20    Jewish comparators" to infer discriminatory intent.  He points to a number of other artists

21    who have previously performed at Harbin and also made public statements critical of

22    Israel.  FAC ¶¶ 28–33.  But Pauker fails to allege that those artists were not Jewish and,

23    more importantly, that Harbin was aware of their public statements.  Cf. Gen. Bldg.

24    Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 389, 102 S. Ct. 3141, 3149, 73 L.

25    Ed. 2d 835 (1982) ("We conclude, therefore, that § 1981 . . . can be violated only by

26    purposeful discrimination.").  Accordingly, this "second theory of liability" falls short at

27    the gate.  Opp. at 5.

28        Because each of Pauker's claims requires discrimination as an actionable element,

United States District Court
Northern District of California

1    Pauker's complaint fails to adequately state claims for relief.  The claims also fail for

2    certain claim-specific reasons, which are articulated below.

3        **B.    42 U.S.C. § 2000a(a)**

4        Title II of the Civil Rights Act of 1964 provides:  "All persons shall be entitled to

5    the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and

6    accommodations of any place of public accommodation, as defined in this section, without

7    discrimination or segregation on the ground of race, color, religion, or national origin."  42

8    U.S.C. § 2000a(a).  "[T]he overriding purpose of Title II [was] to [re]move the daily

9    affront and humiliation involved in discriminatory denials of access to facilities ostensibly

10   open to the general public."  Daniel v. Paul, 395 U.S. 298, 307–08, 89 S. Ct. 1697, 23 L.

11   Ed. 2d 318 (1969) (quotation omitted).

12       At the outset, for the reasons discussed, Pauker's claim under Title II fails due to a

13   lack of discrimination in his complaint.  It also fails because Pauker does not allege that he

14   was denied the "full and equal enjoyment" of Harbin's "goods, services, facilities,

15   privileges, advantages, and accommodations."  He specifically alleges that Harbin invited

16   him to visit the venue.  FAC ¶ 23.  That is not a "discriminatory denial[] of access to

17   facilities ostensibly open to the general public."  Daniel, 395 U.S. at 307–08.

18       In an attempt to save his claim, Pauker cites the Ninth Circuit and U.S. Supreme

19   Court decisions in PGA Tour, Inc. v. Martin, where the courts noted that public

20   accommodations could include places also used for business interests under Title III.  Opp.

21   at 7–8.  But Pauker misses the point.  Those cases were discussing what falls under the

22   definition of a public accommodation, which is not at issue here.  Pauker alleges that

23   "Harbin provides lodging to transient guests" and that is enough at this stage for it to be a

24   public accommodation.  FAC ¶ 4; see 42 U.S.C. § 2000a(b)(1) (an "establishment which

25   provides lodging to transient guests" is a place of public accommodation).  Pauker does

26   not address the "full and equal enjoyment" element of the statute.  He does not, and

27   cannot, allege that the general public had the right to contract with Harbin to perform.  Cf.

28   Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc., 664 F. Supp. 3d 1142, 1168

1    (S.D. Cal. 2023) ("[U]nder California law, parties are free to contract as they please.")

2    (internal citation omitted), appeal dismissed, No. 23-55394, 2023 WL 11226984 (9th Cir.

3    Oct. 3, 2023).  Accordingly, his own allegation that he could still enjoy Harbin's facilities

4    dooms his claim.

5           **C.**     **42 U.S.C. § 1981**

6          Section 1981 provides that "[a]ll persons within the jurisdiction of the United States

7    shall have the same right in every State and Territory to make and enforce contracts . . . as

8    is enjoyed by white citizens." 42 U.S.C. § 1981.  Thus, § 1981 prohibits discrimination

9    with respect to contracts "on account of [a plaintiff's] race or ethnicity."  Johnson v.

10   Riverside Healthcare Sys., LP, 534 F.3d 1116, 1123 (9th Cir. 2008).  "To prevail," in a §

11   1981 case, "a plaintiff must initially plead and ultimately prove that, but for race, it would

12   not have suffered the loss of a legally protected right."  Comcast Corp. v. Nat'l Ass'n of

13   Afr. Am.-Owned Media, 589 U.S. 327, 341, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356

14   (2020).

15         As discussed, Pauker fails to meet this standard.  His complaint does not raise a

16   reasonable inference that his race was the reason Harbin cancelled his performance.

17   Accordingly, this claim is dismissed.

18          **D.**     **42 U.S.C. § 1982**

19         Section 1982 "prohibit[s] all racial discrimination, private and public, in the sale

20   and rental of property."  Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437, 88 S. Ct.

21   2186, 2202, 20 L. Ed. 2d 1189 (1968).  Once again, however, Pauker alleges no facts

22   supporting claims of discrimination.  But that is not the only deficiency.  Pauker also fails

23   to allege that Harbin actually prevented him from selling his merchandise on site.  He

24   merely makes a conclusory assertion that the cancellation of his performance inherently

25   meant he could not also sell merchandise.  See FAC ¶ 50 ("Plaintiff . . . was unlawfully

26   denied the same right to sell his merchandise . . . when Harbin cancelled Plaintiff's

27   concert.").  This is unsupported by any allegation; nowhere does Pauker allege that Harbin

28   even discussed merchandise with him.  Harbin only said no to Pauker's concert—still

United States District Court
Northern District of California

7

1    permitting Pauker to visit the venue without mention of merchandise.  Id. ¶ 23.  Pauker has

2    therefore failed to state a claim under 42 U.S.C. § 1982.

3         **E.     Unruh Act**

4         The Unruh Act guarantees that all persons within California, "no matter what their

5    sex, race, color, religion, ancestry, national origin, disability, or medical condition are

6    entitled to the full and equal accommodations, advantages, facilities, privileges, or services

7    in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

8    Because the statute only "prohibit[s] intentional discrimination in access to public

9    accommodations," Pauker's inability to plead discrimination warrants dismissal.  Harris v.

10   Capital Growth Inv'rs XIV, 805 P.2d 873, 874 (Cal. 1991).

11        As explained above for 42 U.S.C. § 2000a(a), Pauker similarly fails to plead that he

12   was denied "full and equal" accommodations by virtue of Harbin's permission to visit the

13   grounds.  See Opp. at 10 (Pauker pleads the "same set of facts" for Section 2000a and for

14   the Unruh Act).  Pauker again points to the Supreme Court's decision in Martin to salvage

15   his claim.  He argues that the PGA Tour being "open to the general public because of open

16   tryouts" should apply to Harbin, too, as "anyone can pitch Harbin via email like" Pauker.

17   Id. at 11.  Even if that were true, Pauker only makes this point in opposition—not in his

18   pleadings.  In his complaint, Pauker only alleges that he—a musician who has performed

19   at many venues including Harbin—reached out to Harbin to propose a Hanukkah concert.

20   FAC ¶ 13.  Nowhere does he allege that Harbin was open for all comers to perform (which

21   is also undercut by the need for a contract and a proposal in the first instance).

22   Accordingly, Pauker's Unruh Act claim fares no better than his Section 2000a claim.

23        **F.     First Amendment**

24        Heart also argues that the First Amendment bars all of Pauker's claims because it

25   protects Harbin from being forced to "endorse either side of [the Israel/Palestine] debate

26   under threat of enforcement of civil rights statutes."  Mot. at 17.  Even assuming at this

27   stage that Pauker's Zionism is a political belief, the First Amendment does not shield

28   Heart.  While Heart is correct that "no public accommodations law is immune from the

United States District Court
Northern District of California

8

1  demands of the Constitution," the case law does not support its position.  Id. at 18 (citing

2  303 Creative LLC v. Elenis, 600 U.S. 570, 592, 143 S. Ct. 2298, 2315, 216 L. Ed. 2d 1131

3  (2023)).  The First Amendment protects places of public accommodation "engaged in

4  expressive conduct."  Elenis, 600 U.S. at 600; see also Green v. Miss United States of

5  Am., LLC, 52 F.4th 773, 789 (9th Cir. 2022).  But as Pauker points out, his complaint does

6  not purport to describe any expressive conduct attributable to Harbin.  Opp. at 12.

7  Consequently, at the motion to dismiss stage, Heart cannot seek refuge in the First

8  Amendment.

9  **IV.    CONCLUSION**

10          For the foregoing reasons, the Court GRANTS Heart's motion to dismiss with leave

11  to amend.

12          **IT IS SO ORDERED.**

13          Dated:  October 9, 2025

14          CHARLES R. BREYER
           United States District Judge