IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PAUKER,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>HEART CONSCIOUSNESS CHURCH, INC., et al.,<br><br>　　　　　　Defendants. | Case No. 25-cv-02852-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

  Plaintiff Michael Pauker's Second Amended Complaint ("SAC") fails to remedy the deficiencies that were fatal to the prior iteration. At bottom, Pauker alleges that Defendant Heart Consciousness Church ("Harbin") had worked with him before, contracted with him to perform at a Hanukkah concert, terminated the contract due to severe community backlash stemming from Pauker's pro-Israel Facebook post, and still permitted Pauker to enjoy the facilities as a spectator, not a performer. In Pauker's view, Harbin's conduct is racial and religious discrimination. In other words, Pauker contends that Harbin hired a Jewish musician to perform at a Jewish festival and then discriminated against him for being <u>Jewish</u>. That is not plausible. Accordingly, the Court **GRANTS** Harbin's motion to dismiss.[1] For purposes of this order, the Court assumes familiarity with the factual allegations and relevant law.

  As the Court previously noted, "each of Pauker's claims requires discrimination as an actionable element." Order (dkt. 34) at 5. And the SAC still fails to plausibly allege

---

[1] The Court determines that this matter is suitable for resolution without oral argument. Civ. L.R. 7-1(b).

that Harbin was motivated by Pauker's race or religion when it cancelled his contract. The fundamental factual allegations remain the same. Harbin willingly contracted with Pauker, a Jewish musician, to "perform a Hanukkah concert." SAC ¶¶ 14, 15. It was only 10 days after the agreement, when Harbin allegedly received "severe 'negative feedback'" and "community complaints" from its members about Pauker's social media post, that Harbin cancelled Pauker's contract. Id. ¶¶ 19–26. And even after cancelling the performance, Harbin still permitted Pauker to enjoy the facilities as a member of the public. Id. ¶ 27.

These allegations fail to plausibly demonstrate that Harbin discriminated against Pauker because he was Jewish. To the contrary, the SAC shows how Harbin willingly platformed a Jewish musician to celebrate a Jewish festival. And that Harbin's reason for cancelling Pauker's performance was not him being Jewish, but rather due to the backlash and potential violence stemming from Pauker's Facebook post. SAC ¶ 19.

Pauker attempts to escape this conclusion by characterizing Harbin's justification as "false and pretextual." SAC ¶ 31. He generally asserts that it is "common for antisemitic institutions and organizations and/or those who have engaged in antisemitic acts to give appearances of an affinity to Judaism as a fig leaf." Id. ¶ 22. And then speculates that Harbin "might also express affinity towards Judaism in one instance and antisemitism in another." Id. But such vague speculation is wholly unsupported by any factual allegation in the SAC. Pauker does not even allege that Harbin took issue with his purported Zionist views, only that the backlash was from the community and other performers. See id. ¶ 26. The SAC also fails to point to any past instances of antisemitism that could support an allegation of pretext against Harbin. Instead, Pauker concedes that he has worked with Harbin in the past without issue. See id. ¶ 3.

Moreover, Pauker's related argument of disparate impact also falls flat. Pauker argues "that there were similarly situated, non-Jewish individuals that engaged in similar, purportedly disfavored conduct as [him] but were not penalized." Opp'n (dkt. 41) at 10. Specifically, he alleges that other non-Jewish Harbin performers "have waded into the Israeli-Palestinian conflict" on social media and have not had their performances

cancelled. SAC ¶ 29. The SAC then alleges that it is "an industry standard" for "concert venues to thoroughly vet prospective performers' social media accounts." Id. ¶ 35. And since Harbin is part of that industry, "it would have been near impossible" for Harbin to miss other "commentary on the Israeli-Palestinian conflict. Id.

But Pauker's allegations are lacking. For starters, as Harbin argues, it is rather speculative to claim that Harbin—described by Pauker as a "lodging" that offers hot springs, yoga, spiritual awakening recovery meetings, and more—would adhere to the "industry standard." Reply (dkt. 42) at 6; see also SAC ¶ 4. And again, Pauker does not actually allege that Harbin was aware of the social media posts of its performers. SAC ¶ 35 (only alleging it "would have been near impossible for Harbin to miss" the posts). Indeed, the SAC itself casts doubt on Pauker's assertion. For example, Pauker alleges that he has performed at Harbin in the past and was then going to perform at the Hanukkah concert at issue. Id. ¶¶ 3, 15. If Harbin followed the "industry standard," it would have thoroughly vetted Pauker's social media posts. Notably, Pauker made his unpopular pro-Israel post on October 7, 2023, which was before Harbin brought him on for the Hanukkah concert. Id. ¶ 12. Yet Pauker alleges Harbin only allowed him to perform at Harbin "before the venue learned he was a Zionist." Id. ¶ 3. Accordingly, Harbin either did not care about the post and Pauker's Zionism (which would further undermine Pauker's claims) or did not thoroughly vet his social media (undercutting allegations that Harbin was aware of its performers' online posts).

Even assuming Harbin was aware of the social media posts of all of its performers, the SAC fails to allege disparate impact on the basis of race or religion. Pauker goes to great lengths to characterize his Facebook post as religious or racial in nature, rather than political. See, e.g., SAC ¶¶ 20, 32. And the Court previously assumed—without deciding—that Pauker was correct that Zionism could be "a proxy for Judaism or Jewish racial identify." Order at 4. But as Harbin notes, the SAC fundamentally alleges that any disparate impact was at most prioritizing speech on the opposite side of the Israel-Palestine conflict, not on account of Pauker being Jewish. See Mot. (dkt. 38) at 15.

3

The key comparison Pauker takes issue with is not Jewish vs. non-Jewish, but speech that is either pro-Israel or pro-Palestine. The SAC is replete with descriptions of speech by other Harbin performers that is critical of Israel. It points to accusations of genocide, burning of the Israeli flag, songs that accuse Israel of targeting civilians in Gaza, and even a panel on Gaza with an American political figure. See SAC ¶¶ 33–38. Pauker contrasts that speech with his post of a military tank expressing his support of Israel after an attack by Hamas. Id. ¶ 12. While Pauker is correct that he can allege "there were similarly situated, non-Jewish individuals that engaged in similar, purportedly disfavored conduct," the SAC makes clear it was speech and not race or religion that led to differing outcomes.[2] Opp'n at 10. And Pauker fails to show Zionism was a proxy for Jewish discrimination on Harbin's part. After all, Harbin was already fully aware Pauker was Jewish. Accordingly, Pauker's disparate impact allegations also fail to pass muster.

The SAC also failed to remedy a claim-specific deficiency the Court had previously identified. Pauker brings a claim for a violation of 42 U.S.C. § 1982 but still fails to allege that Harbin actually denied him the ability to sell his merchandise. SAC ¶¶ 58–61. He merely alleges that Harbin "does not generally allow individuals to set up shop on its premises and sell items." Id. ¶ 4. But, again, that is not the same as Harbin actually preventing Pauker from selling on site. See Order at 7. "[N]owhere does Pauker allege that Harbin even discussed merchandise with him." Id.

For the foregoing reasons, the Court **GRANTS** Harbin's motion to dismiss with prejudice, since Pauker cannot cure the identified deficiencies.[3]

**IT IS SO ORDERED.**

Dated: February 3, 2026

CHARLES R. BREYER
United States District Judge

---

[2] The Court notes that it is entirely possible to express speech in support of Israel without being Jewish. Indeed, Pauker concedes that not all Jewish people are Zionist or consider Israel an important part of their identities. Opp'n at 9.

[3] Because the Court grants Harbin's motion to dismiss, its alternative motion to strike is moot.